UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCUS KING,

                              Plaintiff,

                    -v.-

RAYMOND J. COVENY,

                              Defendant.

18 Civ. 2851 (KPF) (OTW)

**OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is the July 1, 2022 Report and
Recommendation from United States Magistrate Judge Ona T. Wang (the
"Report" (Dkt. #28), attached), addressing Marcus King's petition for a writ
of *habeas corpus* pursuant to 28 U.S.C. § 2254 (the "Petition" (Dkt. #1)).  Judge
Wang recommends that the Petition be dismissed in its entirety.

The Court has examined the Report and notes that no party has objected
within the fourteen-day period from its service, as provided by 28 U.S.C.
§ 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the
reasons set forth below, the Court finds no error in the Report and adopts it in
its entirety.

## BACKGROUND

The relevant facts underlying this action are set forth in the Report, and
the Court assumes familiarity with them.  A brief overview is set forth herein,
drawing from the recitation of the facts in the Report (*see* Report 3-6), as well
as from entries in the public docket.

On January 11, 2012, Petitioner was convicted in the New York State Supreme Court, Bronx County, of two counts of criminal possession of a weapon in the second degree, N.Y. Penal Law §§ 265.03(1)(b), 265.03(3), and one count of assault in the second degree, N.Y. Penal Law § 120.05(2).  (Report 6; Dkt. #17, Ex. 1).  Petitioner's convictions stemmed from events that occurred on August 30, 2008.  That night, two women called a cab to take them from a house party.  (Report 3).  Petitioner, who was also at the party, told the women that he was going to take their cab.  (*Id.*).  An argument ensued and ended with King shooting one of the women in the back.  (*Id.*).  Petitioner was arrested on April 29, 2009.  (*Id.* at 4).

Petitioner was convicted after a jury trial.  (Report 6).  At trial, the prosecution admitted a redacted arrest photograph of Petitioner taken on August 1, 2008, over Petitioner's objection that the photograph was unduly prejudicial.  (*Id.* at 5).  The photograph was admitted for the sole purpose of showing the length of Petitioner's hair on that date, which matched witness descriptions of his hair on the night of the crimes.  (*Id.*).  Additionally, and again over Petitioner's objection, the trial court allowed law enforcement witnesses to testify about their multi-month efforts to locate Petitioner following the crimes.  (*Id.*).  The trial court denied the prosecution's request for a consciousness-of-guilt charge based on this testimony.  (*Id.*).

The trial court sentenced Petitioner to fifteen years in prison and five years of supervised release.  (Report 6).  The court noted that the prosecution

had previously offered Petitioner a plea deal of two to four years' imprisonment but found that fact irrelevant to its sentencing determination. (*Id.*).

Petitioner thereafter appealed to the Appellate Division, First Department. As relevant here, Petitioner claimed that the introduction of the redacted photograph and law enforcement testimony violated his due process and fair trial rights, and separately argued that his sentence was excessive and/or vindictive. (*See* Report 13). His arguments were rejected, and his conviction and sentence affirmed, in a unanimous decision issued on July 6, 2017. *People* v. *King,* 152 N.Y.S.3d 854 (1st Dep't 2017). Two months later, on October 18, 2017, the New York Court of Appeals denied Petitioner's request for leave to appeal to that court. *People* v. *King,* 30 N.Y.3d 981 (2017).

On March 29, 2018, King filed the instant petition for *habeas corpus*, seeking to challenge his conviction and fifteen-year sentence. (Dkt. #1). Specifically, King argues that his conviction is invalid because (i) the use of a "highly prejudicial previous arrest photograph" at trial deprived him of due process and a fair trial; (ii) trial testimony regarding law enforcement's efforts to locate him following the crime deprived him of due process and a fair trial; and (iii) his fifteen-year sentence is impermissibly excessive or vindictive in light of the plea offer for a lesser sentence. (*Id.*). Thus, King asserts that his conviction and sentence violate the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution. (Report 2, 14).

On June 4, 2018, this matter was referred to Magistrate Judge Wang, who granted Respondent Raymond J. Coveny additional time to answer the

Petition.  (Dkt. #9, 11).  Respondent filed a brief in opposition to the Petition and supporting papers on July 26, 2018.  (Dkt. #17-18).  Petitioner filed a reply brief on August 30, 2018.  (Dkt. #20).

On July 1, 2022, Judge Wang issued the Report and recommended that the Court deny the Petition in full.  (*See generally* Report).  Judge Wang first rejected Petitioner's evidentiary claims regarding the photograph and law enforcement testimony.  She explained that proper application of a presumptively constitutional state evidentiary rule cannot violate the federal constitution and credited the Appellate Division's conclusions that the evidentiary rulings did not violate state law.  (*Id.* at 9-14).  Judge Wang then rejected Petitioner's excessive sentence claim after determining that Petitioner was not entitled to a presumption of vindictiveness because the trial court offered a neutral explanation for his sentence.  (*Id.* at 14-15).  Finally, Judge Wang recommended that a certificate of appealability not be issued because King had not "made a substantial showing of the denial of a constitutional right."  (Report 16 (citing 28 U.S.C. § 2253(c)(2))).

Judge Wang advised the parties that they had fourteen days from the issuance of the Report to file written objections and, further, that "failure to file timely objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review."  (Report 16 (emphases in original)).  Neither party objected to the Report.  (*See* Dkt. #30 (Respondent's statement of non-objection to Report)).

## DISCUSSION

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted). A magistrate judge's decision is clearly erroneous only if the district court is "'left with the definite and firm conviction that a mistake has been committed.'" *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A party's failure to object to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver of the party's right both to object to the report and recommendation and to obtain appellate review." *Grady* v. *Conway,* No. 11 Civ. 7277 (KPF) (FM), 2015 WL 5008463, at *3 (S.D.N.Y. Aug. 24, 2015) (citing *Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992)).

Judge Wang's Report issued on July 1, 2022, and objections were due on July 15, 2022. As neither party has submitted objections to the Report, review for clear error is appropriate. *See Phillips* v. *Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013). The Court has reviewed the Report and finds that its reasoning is sound and that it is grounded in fact and in law. More specifically, the Court agrees with Judge Wang's analysis of the legal issues

5

raised by Petitioner, and with her ultimate conclusions that the trial court's evidentiary rulings were valid under state and federal law and that Petitioner's sentence was not constitutionally excessive. (Report 13-15). Having reviewed the record, the Court finds no clear error and adopts the Report in its entirety.

## CONCLUSION

The Court agrees completely with Judge Wang's well-reasoned Report and hereby adopts its reasoning by reference. Accordingly, it is ORDERED that the Petition be dismissed in its entirety.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Love* v. *McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also certifies pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444 45 (1962).

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Order to Petitioner at his address of record.

SO ORDERED.

Dated:      October 3, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                              :
MARCUS KING,                                  :
                                              :
                              Plaintiff,      :        No. 18-CV-2851 (KPF) (OTW)
                                              :
                    -against-                 :        **REPORT AND RECOMMENDATION**
                                              :
RAYMOND J. COVENY,                            :
                                              :
                              Defendant.      :
                                              :
-----------------------------------------------------------x

**ONA T. WANG**, United States Magistrate Judge:

**To the Honorable KATHERINE POLK FAILLA, United States District Judge:**

I.     **Introduction**

       Petitioner Marcus King brings this habeas corpus proceeding in accordance with 28

U.S.C. § 2254, seeking to challenge his conviction and sentence.[1] Petitioner's first trial ended in

a mistrial; at his second trial, he was convicted of two counts of criminal possession of a

---

[1] Although Petitioner was incarcerated at Elmira Correctional Facility at the time he filed his Petition, he was released on February 25, 2022, following the expiration of his Maximum Expiration Date, according to the New York State Department of Corrections and Community Supervision Inmate Lookup service. *See* Inmate Lookup, DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, http://nysdoccslookup.doccs.ny.gov (last visited June 10, 2022); *see also* ECF 1. Although Petitioner is no longer in custody, Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, requires that a state prisoner's habeas petition "name as respondent the state officer who has custody." Accordingly, the Court treats Petitioner's Petition as if he had named the proper respondent. *See, e.g., Bell v. Ercole*, 631 F. Supp. 2d 406, 411 n.1 (S.D.N.Y. 2009) (although petitioner was relocated to different prison after filing petition, court deemed respondent proper because named respondent had custody of petitioner at time he filed petition, petitioner was *pro se*, and the State did not challenge court's jurisdiction). Additionally, the fact that Petitioner has been released does not moot his *habeas* petition, as he remains subject to "collateral consequences" from his conviction. *See Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998) (petitioner's incarceration when he filed petition, despite subsequently being paroled, was all that the "'in custody' provision of 28 U.S.C. § 2254 requires" and collateral consequences of wrongful conviction are presumed to exist, even if "remote and unlikely to occur"); *see also Cox v. Brandt*, No. 10-CV-9175, 2012 WL 2282508, at *7 n.7 (S.D.N.Y. June 15, 2012) (Cott, M.J.).

weapon in the second degree, and one count of assault in the second degree and sentenced to 15 years' incarceration with 5 years of post-release supervision. (ECF 18-23, Tr. 32:4-10).

Petitioner asserts three claims:

1) that he was deprived of due process and a fair trial when the trial court allowed use of a "highly prejudicial previous arrest photograph" to show Petitioner's hairstyle at the time of the crime;

2) that he was deprived of due process and a fair trial when the trial court admitted "consciousness of guilt" testimony concerning law enforcement's efforts to locate him; and

3) that Petitioner's sentence of 15 years' incarceration was excessive or vindictive in light of prior plea negotiations where a significantly shorter sentence was offered, but not accepted.

Respondent argues that the evidentiary claims (Claims 1 and 2) are not cognizable on habeas review, and that the excessive sentence claim did not violate the Constitution or any clearly established federal law, because it was within the range prescribed by state law. (ECF 17 at 6, 25).

For the reasons below, I recommend that Petitioner's petition be dismissed.

II.     **Background**

     A.     **The August 20, 2008 Shooting**

On August 30, 2008, two friends, Nikita Williams and Colleen Shepherd, attended a party at 1895 Harrison Avenue in the Bronx. (ECF 18-12, Tr. 12:3-19).  When they left around 5:00 am, Williams and Shepherd went to call a cab from the porch of the house where the party was held. (ECF 18-12, 90:24-91:6). While on the porch and with other people present, Petitioner told Williams and Shepherd that he was "gonna jump in" the taxi and take it for himself. (ECF 18-14, Tr. 272:21-22). A dispute ensued, and Petitioner walked down the stairs with a group of men who Shepherd believed to be members of the gang known as the Bloods. (ECF 18-12, Tr. 36:9-10; ECF 18-12, 38:13-23).  Williams saw Petitioner holding a gun and aiming it at the people on the porch, and Shepherd was shot in the back as they were running back into the house.[2] (ECF 18-15, Tr. 303:1-5; ECF 18-12, Tr. 39:5-23). Williams called 911. (ECF 18-15, Tr. 306:17-21).

That night, Williams and Shepherd provided police with a physical description of Petitioner. (ECF 18-12, Tr. 8-18; ECF 18-15, Tr. 310:12-14). They described him as a Black male, short/stocky, in his early 20s, and with long "braids" or "cornrows." (ECF 18-15, Tr. 310:12-25; ECF 18-12, Tr. 42:21-22). Both women admitted later that that they knew Petitioner, believed he was a member of the Bloods, and feared retaliation, so they had not initially identified him by name. (ECF 18-12, Tr. 49-50: 4-17; ECF 18-12, Tr. 70:9-11; ECF 18-15, Tr. 311-312:9-2).

---

[2] Shortly after the shooting, police recovered a gun and shell casings at the scene. (ECF 18-13, Tr. 182:19-184:16; ECF 18-14, Tr. 220:17-222:5). The casings, and the bullet recovered from Shepherd's back were fired from the gun. (ECF 18-20, Tr. 789:8-12, 795:3-4). DNA swabs on the gun did not conclusively link or rule out Petitioner. (ECF 18-17, Tr. 534:1-8).

**B.    The Subsequent Police Investigation (August 30, 2008 through April 28, 2009)**

The same morning, when interviewed by Detective Geary, Williams again provided a physical description of Petitioner consistent with the one she had provided on the scene, and added that the shooter was a member of the Bloods, but did not identify Petitioner by name. (ECF 18-15, Tr. 312:5-314:10, Tr. 394:11-22). Over the course of the next several days, Detective Geary and others canvassed the area, looked for witnesses, and were told that the shooter's name was "Marcus" or "Marcus King." (ECF 18-18, Tr. 607:10-18; ECF 18-18, Tr. 654:15-655:22). During this time, Williams told Detective Geary that she knew the shooter but did not identify him by name. (ECF 18-15, Tr. 314:2-10; ECF 18-18, Tr. 604-606:2). Approximately ten days after the shooting, Detective Geary showed Williams a picture of Petitioner, at which time Williams identified Petitioner as "Marcus," said that he was the man who'd shot Shepherd, and explained that her family and friends had been pressuring her to tell the truth. (ECF 18-18, Tr. 675:5-21; ECF 18-15, Tr. 331:23-332:25).

Over the next several weeks and months, Detective Geary and other law enforcement personnel visited Petitioner's last known address, 1137 Forest Avenue, several times, speaking to Petitioner's family members on at least a few occasions. (ECF 18-18, Tr. 618:7-619:4; ECF 18-19, Tr. 625:1-626:10; ECF 18-19, Tr. 735:6-10; ECF 18-19, Tr. 741:4-20). They also canvassed areas where Petitioner was believed to frequent, but were unable to locate him. (ECF 18-18, Tr. 620:18-626:15).  On April 28, 2009, nearly 8 months after the shooting, Detective Gonzalez went to 1137 Forest Avenue and spoke to one of Petitioner's family members. (ECF 18-19, Tr. 749:21-750:6). The next day, after he received a telephone call, Detective Gonzalez went to 1137 Forest Avenue, and arrested Petitioner without incident. (ECF 18-19, Tr. 750:9-751:3). At

the time of Petitioner's arrest, he had short hair. (ECF 18-19, Tr. 750:9-11; ECF 18-19, Tr. 751:16-18).

### C.   **Procedural History**

At trial, both Shepherd and Williams identified Petitioner as the man who had argued with Williams over the taxi. (ECF 18-12, Tr.76:14-16; ECF 18-12, Tr. 31:2-24; ECF 18-14, Tr. 272:18-24). Williams also identified Petitioner as the man who had aimed a gun at them on August 30, 2008. (ECF 18-14, Tr. 273:1-274:15).  After Shepard and Williams both admitted that Petitioner now had short hair instead of the longer braids they had described at the time of the shooting (ECF 18-15, Tr. 301:3-22; ECF 18-12, Tr. 77:17-21), the prosecution admitted a redacted arrest photograph of Petitioner from August 1, 2008, "solely for the purpose of showing the length of [Petitioner's] hair on" August 1, 2008. (ECF 18-20, 824:3-12). Although the parties had stipulated to the authenticity of the photograph (ECF 18-12, 56:5-23), defense counsel objected to its admission, even in redacted form, on grounds that the photograph was prejudicial and suggested Petitioner's had prior interactions with the criminal justice system (ECF 18-5, Tr. 520:18-21).

Over Petitioner's objection, the trial court also allowed testimony from law enforcement witnesses on their efforts to locate Petitioner over more than seven months. The prosecution requested a consciousness of guilt charge, which the trial court denied. (ECF 18-21, Tr. 902:16-904:15). The trial court cautioned the prosecutor to restrict her comments to inferences that could be drawn from the evidence. (ECF 18-9, Tr. 813:4-11).

After deliberation and several notes concerning Williams's testimony about the shooting, the jury found Petitioner guilty of all three counts submitted to it: two counts of criminal possession of a weapon in the second degree, and one count of assault in the second degree. (ECF 18-23, Tr. 4:19-5:2). At sentencing, the prosecution admitted that Petitioner had been offered a plea deal of two to four years after his first trial, but the point of the plea offer had been to avoid putting Williams and Shepherd through the "ordeal" of testifying at trial again. (ECF 18-23, Tr. 6:3-7:17). Petitioner's counsel sought the minimum sentence, arguing, *inter alia*, that sentencing Petitioner to the maximum sentence would be punishing him for asserting his rights and going to trial. (ECF 18-23, Tr. 22:16-23:6). The trial court noted that the plea offer had no relevance as to the appropriate sentence, and imposed an aggregate term of 15 years' imprisonment and five years' post-release supervision. (ECF 18-23, Tr. 31:7-13, 32:4-10).

III.    **Analysis**

    A.  **The Standard of Review**

A *habeas corpus* petition is not a vehicle to relitigate every issue previously determined in state court. *Herrera v. Collins*, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking *habeas* relief under § 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1996). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. *See Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).

A federal court may grant a writ of *habeas corpus* to a state prisoner where the state court's adjudication of the petitioner's federal claim on the merits:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the

United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

A decision is "contrary to" clearly established federal law, as determined by the

Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law" or "if the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to

[the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 404-405 (2000). A decision is an

unreasonable application of clearly established federal law if a "state court identifies the

correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies

that principle to the facts of the prisoner's case." *Id.* at 413; *accord Cullen v. Pinholster*, 563 U.S.

170, 182 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (defining "unreasonable

application" to require more than clear error). Moreover, a "federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Lockyer*, 538 U.S.

at 75.

The standard for relief under the Antiterrorism and Effective Death Penalty Act

("AEDPA") "is difficult to meet, because the purpose of AEDPA is to ensure that federal *habeas*

relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks omitted); *accord Metrish v. Lancaster*, 569 U.S. 351, 356–59 (2013); *see Burt v. Titlow*, 571 U.S. 12, 19 (2013) ("AEDPA erects a formidable barrier to federal *habeas* relief for prisoners whose claims have been adjudicated in state court").

> "[C]learly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of this Court's decisions." *Howes v. Fields*, 565 U.S. 499, 505, 132 S. Ct. 1181, 1187, 182 L.Ed.2d 17 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)). And an "unreasonable application of" those holdings must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–787, 178 L.Ed.2d 624 (2011).

*White v. Woodall*, 572 U.S. 415, 419–20 (2014); *accord Smith v. Artus*, 610 F. App'x 23, 26 (2d Cir. 2015) (summary order). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits." *Greene*, 565 U.S. at 38 (citing *Cullen*, 563 U.S. at 181).

### D.   Federal Habeas Review Standard for Claims of Error in State Evidentiary Rulings

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law").  Thus, a habeas petitioner must demonstrate that the allegedly-erroneous

state court evidentiary rulings violated an identifiable constitutional right. *See, e.g.*, *Taylor v. Curry,* 708 F.2d 886, 890-91 (2d Cir.) ("Erroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial") (emphasis in original), *cert. denied,* 464 U.S. 1000 (1983); *see also, e.g., Vega v. Portuondo,* No. 03-2856, 120 Fed. Appx. 380, 382, 2005 WL 78786 at *1 (2d Cir. Jan. 10, 2005) ("Even assuming, for the sake of argument, that petitioner is correct to assert that admission of [the evidence] was erroneous as a matter of [state] law, this alone would not suffice to merit federal habeas relief.... The introduction of unfairly prejudicial evidence against a defendant in a criminal trial ... does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice") (internal citations and quotation marks omitted). That is a "heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." *Bonet v. McGinnis,* 98 Civ. 6529, 2001 WL 849454 at *2 (S.D.N.Y. July 27, 2001) (internal citations and quotation marks omitted).

The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional. *See, e.g., Brooks v. Artuz,* 97 Civ. 3300 (JGK), 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct.17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); *Jones v. Stinson*, 94 F. Supp. 2d 370, 391–92 (E.D.N.Y.), rev'd, 229 F.3d 112 (2d Cir. 2000), as amended (Nov. 16,

9

2000) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis).

Second, the petitioner must allege that the state evidentiary error violated an identifiable constitutional right. This necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system. Here, Petitioner asserts that his due process rights and right to a fair trial were violated by the state court's evidentiary rulings regarding the arrest photograph and testimony of the steps taken by law enforcement to locate him. (ECF 1 at 7, 52).

Third, an erroneous state evidentiary ruling that is asserted to be a constitutional violation will merit habeas relief only "where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Rosario v. Kuhlman,* 839 F.2d 918, 925 (internal quotations omitted) (emphasis in original). The test for "fundamental fairness" is whether the excluded evidence, "'evaluated in the context of the entire record,' 'create[d] a reasonable doubt [regarding petitioner's guilt] that did not otherwise exist.'" *Curry,* 708 F.2d at 891 (quoting the materiality standard defined in *United States v. Agurs,* 427 U.S. 97, 112-113 (1976).

The "fundamental fairness" standard applies to the erroneous exclusion or admission of evidence. *See, e.g., Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) ("[f]or the erroneous admission of ... unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it'") (quoting *Johnson v. Ross,* 955 F.2d 178, 181); *Rodriguez v. O'Keefe,* No. 96-2699, 1997 WL 557622 at *2 (2d Cir. Sept.9,

1997), *cert. denied,* 522 U.S. 1123 (1998); *Collins v. Scully,* 755 F.2d 16, 18–19 (2d Cir. 1985);

*Roldan v. Artuz,* 78 F.Supp.2d 260, 276 (S.D.N.Y. 2000).

The final question is how to apply AEDPA in the context of a fundamental fairness

analysis, an issue addressed by the Second Circuit in *Jones v. Stinson,* 229 F.3d 112, 120-121 (2d

Cir. 2000), as amended (Nov. 16, 2000). In *Jones,* the state appellate court decided that the trial

court's evidentiary rulings had not denied the defendant a fair trial. *Id.* at 116. The Second

Circuit held that although it might have found, under the *Agurs* standard, that one of the trial

court's rulings "create[d] a reasonable doubt that did not otherwise exist," the Second Circuit

could not conclude that the excluded testimony "would so certainly have created new ground

for reasonable doubt that the appellate division's decision [affirming the trial court's ruling] was

objectively unreasonable." *Id.* at 120. The Second Circuit thus denied habeas relief based on

AEDPA's deferential review standard. *Id.* at 120-21.

In sum, for Petitioner to succeed with his federal habeas corpus claims asserting state

evidentiary errors, he must establish (1) that the trial court's evidentiary rulings were erroneous

as a matter of state law, (2) under *Agurs*, that the admission of the evidence deprived him of a

fair trial, and (3) under the AEDPA, that the First Department's affirmance of the trial court's

ruling constituted an unreasonable application of the *Agurs* standard.

### 1.    Law applied to Admission of the redacted photograph and police attempts to locate Petitioner

Petitioner argues that his due process rights were violated when the trial court admitted

the redacted arrest photograph and allowed testimony of police efforts to locate him in the

months following the shooting.  At trial, defense counsel objected to showing Ms. Williams the

11

photo, stating, "The jury knows from her testimony that Mr. King who she identified as had braids . . . there's going to be no argument from the defense that he didn't have braids so this picture only serves to bolster." (ECF 18-15, Tr. 316:1-18). The prosecution "supplied case law saying that the people are allowed to use any prior photo for the witness to show that this is the way the defendant appeared on the date of the incident." (ECF 18-15, Tr. 316:23-317:1). The trial court overruled the objection, and the only testimony elicited from Williams was that the photo "looks different from [the night of the incident]." (ECF 18-15, Tr. 317:4; ECF 18-15, 317:25-318:6).

Later, counsel and the trial court engaged in further colloquy about the photograph, and agreed to a stipulation that the photo of Petitioner was taken on August 1, 2008. (ECF 18-20, Tr. 764:22-765:6). The trial court then ruled that the photo could be introduced: "I think it is relevant just to show the length of the hair. If you want a limine instruction saying simply it's to show the length of the hair on August 1st, I can do that." (ECF 18-20, Tr. 767:12-16). On summation, the prosecutor argued that the length of Petitioner's hair on August 1 was important because "if the defendant's hair was short on August 1 of 2008, it would be impossible for him to have grown his hair so fast [to the length testified by Williams] . . . within 29 days later." (ECF 18-22, Tr. 986:4-7).

On November 17, 2011, the prosecutor notified the trial court and defense counsel that they intended to call Detectives Geary and Gonzalez concerning their efforts to apprehend Petitioner in the months between the August 30, 2008 shooting and Petitioner's April 29, 2009 arrest. (ECF 18-17, 581:11-582:10).  Defense counsel argued that the testimony was not

relevant, and that it was prejudicial to have two witnesses testifying about efforts to locate

Petitioner. (ECF 18-17, 582:11-583:5). The trial court overruled the objection:

> I have already ruled that efforts to find the defendant are relevant.
> Granted it's thin evidence, but it s evidence of consciousness of
> guilt and the fact that Detective Gonzalez was undertaking this
> effort to me is relevant. Obviously, he's been strongly cautioned
> not to mention why he was looking for the defendant and . . . both
> witnesses are to be strongly cautioned not . . . to elicit the content
> of any conversation he [sic]had with any of the people.

> (ECF 18-17, Tr. 583:12-21).

During the direct examinations of Detectives Geary and Gonzalez, the trial court

sustained several defense objections. *See generally* ECF 18-18, Tr. 613, 627; ECF 18-19, Tr. 736,

739. At the charging conference, the trial court declined to give a consciousness of guilt charge

but allowed the prosecutor to argue consciousness of guilt. (ECF 18-21, Tr. 902:16-904:15).

On appeal, Petitioner's counsel raised the same arguments, and the First Department

panel found that the trial "court providently exercised its discretion in admitting into evidence"

both the photo and the "unsuccessful attempts by police to locate defendant, after the

shooting, at his place of residence and other areas he was known to frequent." *People v. King*,

152 A.D.3d 412, 413, (2017). For the photo, the First Department noted that it was admitted to

corroborate eyewitness testimony that Petitioner was wearing his hair in braids, "and there was

nothing in the carefully redacted photograph that prejudiced defendant by suggesting that he

had prior interactions with the law." (*Id.*, citing *People v. King*, 276 A.D.2d 319, 320 (2000) (no

error in admission of arrest photograph "since it illustrated the accuracy of the description

given by the undercover officer")). For the evidence concerning police attempts to locate

13

petitioner, the First Department cited *People v. Yazum*, 13 N.Y. 2d 302 (N.Y. 1963), for the proposition that any ambiguity as to whether the evidence warranted an inference of consciousness of guilt "presented a factual issue for the jury." (152 A.D.3d at 412; *see also Yazum*, 13 N.Y.2d at 304, finding that the fact "that [evidence] is equivocal or that it is consistent with suppositions other than guilt does not render [the evidence] inadmissible," citing Wigmore on Evidence, 3d ed., §§ 31, 32).

Here, the trial court's determination to admit this evidence was not erroneous under state law, and so Petitioner cannot show a violation of his constitutional rights. *See Jones v. Stinson*, 229 F.3d.

E.    **Excessive Sentence Claim**

Petitioner's last claim, that the trial court's sentence was excessive because it was greater than that contemplated in a pre-trial plea negotiation, is also without merit. "The term of a sentence does not violate the Eight Amendment if the sentence falls within the statutory range." *Diaz v. Bell*, No. 21CV5452LGSJLC, 2022 WL 1260176, at *21 (S.D.N.Y. Apr. 28, 2022), report and recommendation adopted, No. 21 CIV. 5452 (LGS), 2022 WL 2003461 (S.D.N.Y. June 6, 2022) (internal citations omitted). Indeed, the United States Supreme Court has recognized that "confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect" on a defendant's assertion of his trial rights, but that such choices were an "inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Corbitt v. New Jersey*, 439 U.S. 212, 220 (1978).

14

The Supreme Court has since explained that a "presumption of vindictiveness[3] does not apply in every case where a convicted defendant receives a higher sentence on retrial" *Alabama v. Smith*, 490 U.S. 794, 799-800, 803 (1989) (no presumption of vindictiveness where a "second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea"). Here, unlike the cases distinguished in *Smith*, the trial court explained the reasoning for the sentence, noting Petitioner's criminal history involving several violent crimes, the "sheer senselessness" of the crime, and its timing – only nine days after Petitioner had been released from prison.[4] S. 27-28 (ECF 18-23, Tr. 27:15-16, Tr. 28:23-29:1). *Compare Izaguirre v. Lee*, 856 F. Supp.2d 551, 574 (E.D.N.Y., 2012) (habeas granted, presumption of vindictiveness where trial court told petitioner he would be sentenced to statutory maximum sentence before being presented with state's evidence, hearing any defense, or reviewing a presentence report).

---

[3] Moreover, the line of Supreme Court cases cited herein, considering the presumption of vindictiveness under *North Carolina v. Pearce*, 395 U.S. 711 (1969), only pertains to sentences imposed on retrial after a vacatur of a prior sentence. There is no reason to imply or read an extension of that rule to the circumstances here. See, e.g., Ortiz v. Martuscello, No. 16-CV-7927 (LAP) (OTW), 2018 WL 10468148, (S.D.N.Y. Aug. 23, 2018), report and recommendation adopted, No. 16-CV-7927 (LAP), 2019 WL 6817496 (S.D.N.Y. Dec. 13, 2019) (no habeas relief where sentence imposed after a guilty plea was higher than sentence discussed in prior, unresolved plea negotiations).

[4] The trial court also explicitly stated at Petitioner's sentencing:

I'm aware of the People's plea offer before trial and certainly I am not punishing the defendant for going to trial. There are many reasons the district attorney's office tries to plead out a case and the Court would approve of that decision. I see no relevance to a plea offer to what sentence is appropriate after trial in sentencing you. (ECF 18-23, Tr. 31: 7-13).

## IV.    Conclusion

For the foregoing reasons, Petitioner's *habeas* petition should be denied. Furthermore, because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

## V.    Objections

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be filed with the Clerk of Court, *Pro Se* Intake Unit, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983)).

The Clerk of Court is directed to mail a copy of this Report and Recommendation to

Petitioner.


Respectfully submitted,

Dated: New York, New York
       July 1, 2022

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge